*102 OPINION.
Tkijss3dll :
The sole issue in this proceeding is whether the original or the revised inventory is the proper one to adopt in computing the taxable income of the petitioner for the year 1920. The Commissioner adopted the original inventory and takes the position that it was based on market values as at December 31, 1920, and that the revised inventory is based on market values as of February 15, 1921, after a further decline in the market. The petitioner claims that the revised inventory is based on market values as of December 31, 1920.
In the findings of fact we have set out a schedule showing the reduction in the inventory in dollars and cents and have not attempted to set out the schedule contained in the record showing the original and revised discounts used by the petitioner for they are too voluminous, as they vary to some extent as to the various and numerous articles.
The petitioner in its income-tax return for 1920 reported its inventory at $510,596.25 and in-its petition claims that the revised inventory of that amount is the proper one to adopt in determining its taxable income. However, the record before us establishes a revised inventory in the amount of $510,741.73.
Leighton’s uncontradicted testimony as to market conditions and values as at December 31, 1920, is convincing. However, to further establish the petitioner’s contention there has been submitted the testimony of several disinterested and well qualified witnesses, who sold plumbing and other supplies to the petitioner.
One witness, who since 1910 has been the sales manager of a textile belting company of Chicago, Ill., testified that his concern had to revise its discounts on belting shortly after October, 1920, *103 because of the demoralized condition of the market and that the values used by the petitioner in its revised inventory on belting were the fair market values as of December 31, 1920. This witness also testified that prices continued to drop during the first months of 1921 requiring further revisions in discounts.
Another witness, an officer in a company which for many years has manufactured lavatory fixtures, testified that such fixtures were sold during the latter part of 1920 at most any price the manufacturers could get. He further testified that the petitioner in its revised inventory as to such fixtures used prices on which his company was offering to sell such articles.
Another witness, the sales manager, of a malleable iron company for 25 years, testified that by December 31, 1920, the market was in a most chaotic condition. This witness gave a statement showing the discount rates as of December 31, 1920, on iron fittings as used by the petitioner in its revised inventory, were the equivalent of his companies’ discount rates at that time.
Another witness, general sales manager of the Y. & K. Co., testified that petitioner in its original inventory used the Y. & K. Co.’s list prices and discounts, but that due to market conditions market prices were 15 per cent less on December 31, 1920, which was a lower value than that used by petitioner in its revised inventory.
The secretary and treasurer of a company manufacturing lead products testified that many contractors who had been dealing with the Government had large stocks of lead goods on hand and were compelled to dispose of such stock at any price in the fall of 1920. He testified that the values on lead goods as used by petitioner in its revised inventory represented the fair market value on December 31, 1920.
The sales manager, for the past 20 years, of a company manufacturing boilers and radiators, testified that the company’s list prices did not represent the true market values on December 31, 1920, but that the values used by petitioner in its revised inventory on radiation products did represent such values.
The sales manager of a company which sells pneumatic pressure tanks testified that the company’s list prices did not represent market values on December 31, 1920, because of the rapid decline in prices at that time, that discount terms were made across the desk by salesmen and that the values used in petitioner’s revised inventory on pneumatic tanks were the correct market values on December 31, 1920.
We are convinced by the testimony and record in this proceeding that the petitioner was conservative in revising its inventory for 1920, and that as to that portion of the inventory which was re *104 vised the petitioner used the fair market values as of December 31, 1920, as quoted to it by the representatives of the manufacturers it had been dealing with.
The revised inventory in the amount of $510,741.73 is the proper one to adopt in computing the petitioner’s taxable income for the year 1920. See Appeal of California, Canneries Co., 2 B. T. A. 109, and the Appeal of Summit Wholesale Grocery Co., 1 B. T. A. 1040.

Order of redetermination will he made upon 15 days'1 notice, pursuant to Rule 50, and judgment will he entered in due course.